UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| Ryan Dale Mangum, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No.: 3:14-CV-264-PLR-CCS |
| | ) |
| Sevier County, Tennessee, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Ryan Dale Mangum was arrested in July 2013 for DUI. While in jail, Mr. Mangum, who regularly drank half a gallon of vodka per day, began suffering severe symptoms of alcohol withdrawal. He hallucinated, was unable to speak coherently, grew anxious, and defecated and urinated on himself. Despite witnessing these symptoms and being told by Mr. Mangum's step mother that he was recently hospitalized after becoming unresponsive from detox, the medical staff at the Sevier County Jail failed to send Mr. Mangum to the hospital. At some point during his stay, Mr. Mangum alleges that he was severely beaten by the guards. Still, he alleges he was not sent to the hospital in a timely fashion. Once he was finally sent to the hospital, Mr. Mangum fell into a coma, and was diagnosed with numerous injuries including brain damage. He brought this lawsuit against Sevier County, numerous guards, the nurses at the jail, and First Med—the private entity employing those nurses. First Med and the nurse defendants

have each filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, their motions will be **DENIED**.

I.   Background

On June 30, 2013, Ryan Dale Mangum was arrested for DUI. Because he was unable to post bond, Mr. Mangum remained detained in the Sevier County jail. He began suffering from severe alcohol withdrawal symptoms—hallucinating, "ambulating aimlessly" in his cell, sweating, speaking unintelligibly, and defecating and urinating on himself. This continued for several days during which Mr. Mangum was housed in a solitary confinement cell. According to the complaint, nurses periodically looked in on Mr. Mangum, took his blood pressure, and gave him some medication, but they never sent him to a hospital to be treated.

On July 3, 2013, Mr. Mangum's step mother, a nurse herself, called the jail and spoke with Nurse Peterson. She explained that Mr. Mangum had a history of severe alcohol withdrawal symptoms, and on one past occasion, Mr. Mangum became so unresponsive during detoxification that he had to be transported to Park West Medical Center in Knoxville.

Also at some point on July 3, 2013, Mr. Mangum had an altercation with one of the nurses. He was hallucinating and repeatedly asking for his daughter and saying he needed to leave to go to work. In response, several of the guards allegedly beat Mr.

2

Mangum severely—so severely that Mr. Mangum suffered permanent brain injury and nearly died.[1]

At 1:30 in the morning on July 5, 2013, several jailers and medical personal woke Mr. Mangum in his cell, placed him in a wheelchair and took him to be showered. Records indicate Mr. Mangum was lethargic, unable to stand on his own, and he had cuts on his elbow and cheek.

When one of the nurses observed Mr. Mangum's condition at 8:30 a.m. on July 5, 2013, he recorded that Mr. Mangum needed help wiping himself, was disoriented, had bruises on both arms and both legs, and complained of pain in his ribs. An hour later, the same nurse checked back in on Mr. Mangum, and reported to his supervisor. The supervisor looked at Mr. Mangum through the window of his cell, noted that Mr. Mangum had fecal matter on himself, offered him something to drink, and asked the nurse to continue monitoring Mr. Mangum. Finally, at 12:45 that afternoon, the supervisor decided to send Mr. Mangum to the hospital when he was found lying on the floor, covered in feces, incoherent, with shallow respiration, and a pulse of only 46 beats per minute.

At the hospital, Mr. Mangum was admitted to the ICU for severe metabolic acidosis, respiratory failure, acute renal failure as a result of Rhabdomyolysis (a severe syndrome resulting from blunt force trauma in which muscle fibers are released into the blood stream), septic shock, staph infection, and multisystem organ failure. Mr. Mangum

---

[1] While the complaint initially alleges that Mr. Mangum was beaten on July 3, 2013, it later states that the beating occurred sometime between the morning of July 3 and 8:30 a.m. on July 5, 2013.

went into a coma and underwent emergency dialysis for kidney failure. He remained in a coma for quite some time. X-rays revealed multiple fractures to at least eight of his ribs. After being released from the hospital, Mr. Mangum has continued to suffer from seizures and other neurological and physical disorders. Mr. Mangum contends that these injuries are the result of: (1) being beaten by the deputies; and (2) the defendants' refusal to send him to a hospital in a timely manner.

Mr. Mangum filed suit on June 18, 2014. His amended complaint, filed July 1, 2014, asserts claims against the jail nurses, First Med, Inc. (the private company contracted by Sevier County to provide medical care at the Sevier County Jail), Sevier County, and the guards for excessive force, deliberate indifference to his medical needs, and negligence. First Med and the nurses have moved to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [R. 34, 37, 39, 41, 43].

II.     **Standard of Review**

Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure require the complaint to articulate a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requirement is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A motion to dismiss under Rule 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of the plaintiff's

4

claims that would entitle the plaintiff to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied,* 498 U.S. 867 (1990).

The court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.3d 434, 436 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

Because a motion to dismiss is meant to test the "sufficiency of the plaintiff's claim for relief," the court "may consider only matters properly part of the complaint or pleadings" in ruling on the motion. *Armengau v. Cline*, 7 F. App'x 336, 334 (6th Cir. 2001) (citations omitted). If matters outside the pleadings are introduced and not excluded, the motion to dismiss must be treated as one for summary judgment under Rule 56. Fed R. Civ. P. 12(d); *Wysocki v. IBM*, 607 F.3d 1102, 1104 (6th Cir. 2010). The Sixth Circuit has taken a "liberal view" of what matters fall within the pleadings. *Armengau*, 7 F. App'x at 344. "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Id.* (citations omitted). A court may consider those documents that form part of the pleadings without converting a motion to dismiss into one for summary judgment. *See Rondigo, L.L.C. v.*

5

*Twp of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

Throughout the complaint, Mr. Mangum refers to his medical records from his stay at the Sevier County Jail, but he did not attach the records to the complaint. Accordingly, the defendants attached Mr. Mangum's medical records as an exhibit to their motions to dismiss. Mr. Mangum argues that the medical records are matters outside the pleadings, and that the Court should therefore consider the defendants' motions as motions for summary judgment under Rule 56 and allow Mr. Mangum time to complete discovery before requiring he respond to their motions.

Mr. Mangum's medical records, however, are central to his complaint, which alleges that he received insufficient medical care while he was at the Sevier County Jail. He references them repeatedly throughout the complaint. Accordingly, the medical records will be considered part of the pleadings, and the Court will consider the defendants' motions as motions to dismiss under Rule 12(b)(6)—not motions for summary judgment.[2]

### III. Discussion

"Deliberate indifference" to an inmate's serious medical needs is an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A pretrial detainee's right against deliberate indifference to his serious medical needs is secured by the Due Process

---

[2] In his responses, Mr. Mangum seeks to introduce an "examination" of Daniel Joseph Hartley, one of the Sevier County Jail's nurses who is not a defendant in this action. This document is not referenced by the complaint, and it is not central to Mr. Mangum's claims. Instead, it is simply an attempt to introduce evidence in support of his allegations. It will not be considered in ruling on the defendants' motions to dismiss.

Clause of the Fourteenth Amendment instead of the Eighth Amendment, but the analysis is the same. *See Phillips v. Roane County, Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). When a person, acting under the color of state law, abridges another's constitutional rights, 42 U.S.C. § 1983 provides civil redress. *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989)).

A claim for deliberate indifference under section 1983 has objective and subjective components. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2004); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). The objective component considers whether there is a "sufficiently serious" medical need. *Id.* (citing *Farmer*, 511 U.S. at 835; *Estelle v. Gamble*, 429 U.S. at 104). The subjective component considers whether the prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834). None of the parties argue that Mr. Mangum did not have a sufficiently serious medical need; therefore, the Court only considers whether any of the defendants had a sufficiently culpable state of mind in denying medical care.

Deliberate indifference requires more than mere negligence; it requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). To prove the subjective component, a plaintiff must allege facts which, if true, would show that a prison official: (1) "perceived the facts from which to infer substantial risk to the prisoner;" (2) "did in fact draw the inference;" and (3) "then disregarded that risk." *Santiago v. Ringle*, 734 F.3d at 591

7

(quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). *See also Farmer*, 511 U.S. at 837; *Blackmore*, 390 F.3d at 895. In cases where the plaintiff received some treatment and the dispute is over its adequacy, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.6 (6th Cir. 1976)). A prison official's "failure to alleviate a significant risk that he *should* have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Miller v. Calhoun County*, 408 F.3d at 813 (quoting *Farmer*, 511 U.S. at 838) (emphasis added). On the other hand, when the need for medical treatment is obvious, medical treatment that is so cursory as to amount to no treatment at all may amount to deliberate indifference. *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 551 (6th Cir. 2009) (quoting *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)).

A private corporation that performs a public function may be found to act under the color of law for purposes of § 1983. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991). A provider of medical care at a state detention facility acts under the color of state law. *See, e.g., West v. Atkins*, 487 U.S. 42, 54 (1968); *McDaniel v. Sevier County, Tennessee*, 2013 WL 1120866, at *6 (E.D. Tenn. Mar. 18, 2013) ("Because he was providing medical care to inmates in the Sevier County Detention Facility, defendant Tallent was clearly acting under color of state law.").

The Supreme Court's recent holding in *Minneci v. Pollard*, 132 S.Ct. 617 (2012) does not change that conclusion. In *Minneci*, the Supreme Court held that an inmate does not have a constitutional claim under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against the private employees of a privately operated federal prison. This is not a *Bivens* case. This is a § 1983 case. Other decisions in this district have declined to extend the holding in *Minneci* to § 1983 cases brought by prisoners in state-run facilities. *See Seiber v. Lacey*, 2013 WL 4046313, at *5 (E.D. Tenn. Aug. 8, 2013) (collecting cases); *McDaniel*, 2013 WL 1120866, at *6 (rejecting a *Minneci* argument because the plaintiff was not a federal prisoner or confined in a privately operated facility). Consistent with these decisions, this Court rejects the defendants' invitation to extend *Minneci* to the present facts.

Mr. Mangum asserts two separate deprivations of his right to medical care under the due process clause of the Fourteenth Amendment. *First*, after Mr. Mangum began having alcohol withdrawals, and despite his step mother informing medical staff that on previous occasions Mr. Mangum had to be hospitalized while detoxifying, the medical staff failed to take Mr. Mangum to the hospital. *Second*, after being severely beaten, the medical staff failed to transport Mr. Mangum to the hospital in a timely manner.

**A. Judy Sims**

After Mr. Mangum was put in the general prison population, other inmates reported that he was behaving strangely. Defendant Cummings removed Mr. Mangum from the general population, put him in a solitary confinement cell, and notified Nurse Sims. The amended complaint then states that, "[a]ccording to Sevier County records,

9

Defendant Sims failed to evaluate Plaintiff's medical condition or otherwise provide him with any care, despite knowledge that the Plaintiff was suffering hallucinations and was disoriented." (R. 30, Amended Complaint, Page ID 110). The amended complaint concludes that Nurse Sims "ignored obvious signs that [Mr. Mangum] was in medical distress and . . . took no action to provide him adequate medical care based upon [her] actual knowledge of his hallucinations and disorientation." (*Id.* at Page ID 111).

As discussed above, the Court is required to accept the complaint's factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. The defendants repeatedly contend that Mr. Mangum was taken to the hospital for medical treatment when the severity of his conditions became known; however, that assertion is not necessarily supported by the complaint. Facts pled in the complaint could lead to the conclusion that Mr. Mangum was not taken to the hospital until well after the severity of his condition became known.

The complaint alleges that Mr. Mangum was suffering from severe and possibly dangerous alcohol withdrawal symptoms, and the complaint specifically alleges that the nurses, including Nurse Sims, knew about Mr. Mangum's symptoms. While the medical records indicate that Nurse Sims gave Mr. Mangum some medication, observed him, and took his blood pressure, it is possible that Nurse Sims's observation of Mr. Mangum hallucinating and being disoriented was sufficient for her to infer a substantial risk of harm, and that Nurse Sims's limited medical treatment was so cursory as to amount to no treatment all.

10

Case 3:14-cv-00264-PLR-CCS   Document 102   Filed 02/19/15   Page 10 of 16   PageID #: 1200

Once the parties engage in discovery and have the opportunity to obtain expert testimony, the Court (or a jury) will be in a better position to evaluate these questions and determine if Nurse Sims was deliberately indifferent to Mr. Mangum's medical needs. Her motion to dismiss will be denied.

**B. Susan Peterson**

On the morning of July 3, 2013, Nurse Peterson attempted to give Mr. Mangum his medicine. She observed that he was agitated, disoriented, trembling, and smelled of urine. Her reports indicate that he was very anxious, asking where his daughter was, and insisting that he needed to go to work. As a result of his hallucinations, Mr. Mangum apparently attempted to push past Nurse Peterson's medical cart and walk out of his cell. That day, Nurse Peterson spoke with Mr. Mangum's step mother, and she learned that Mr. Mangum regularly drank in excess of half a gallon of vodka a day, and that he had to be transported to the hospital the last time he detoxed because he became unresponsive. Despite this, Nurse Peterson did not attempt to get Mr. Mangum transferred to a hospital.

Nurse Peterson makes the same arguments as the rest of the nurses. She contends that she gave Mr. Mangum medical treatment by administering medication, observing him, and taking his blood pressure. While that may be true, Mr. Mangum has pled sufficient facts to support the inference that Nurse Peterson was aware of a serious risk, and Nurse Peterson's failure to try to get Mr. Mangum taken to a hospital may evidence a conscious disregard of that risk. Accordingly, Nurse Peterson's motion to dismiss will be denied.

### C. Shena Cable

Nurse Cable interacted with Mr. Mangum on July 4, 2013. At 7:00 a.m., Nurse Cable went to Mr. Mangum's cell to give him his medication. She found him standing at his cell door "trying to get out." (R. 34-1, Medical Records, Page ID 185). Mr. Mangum was unresponsive. He "just kept trying to push through the open door." *Id.* Four hours later, Nurse Cable went back to Mr. Mangum's cell. He was awake, but would not acknowledge his medication. Nurse Cable notified her supervisor, who was able to get Mr. Mangum to take his medicine. At the time, he was apparently "ambulating aimlessly" in his cell, speaking unintelligibly, and sweating. (*Id.* at Page ID 186). Mr. Mangum was not sent to the hospital. That afternoon, Nurse Cable noted that Mr. Mangum was appearing more alert, took his medication without incident, and appeared to be doing better.

The facts pled establish that Nurse Cable observed Mr. Mangum completely disoriented, unresponsive, and suffering from severe effects of alcohol withdrawal. Despite witnessing what could allow her to infer a serious risk of illness or injury, Nurse Cable did not attempt to have Mr. Mangum transferred to a hospital, or do anything apart from notifying her supervisor and continuing Mr. Mangum on his medication. These facts, taken in the light most favorable to the plaintiff, can give rise to the inference that Nurse Cable consciously disregarded a risk to Mr. Mangum's health. Her motion to dismiss will be denied.

**D. Jessie Timbrook**

Nurse Timbrook was the supervisor who helped get Mr. Mangum to take his medication on July 4, 2013. Her notes indicate that he was standing at his door picking at it as if he were trying to open it; he was "ambulating aimlessly around in cell;" speaking unintelligibly; visibly sweating; and there was a foul odor coming from the cell. Apart from encouraging him to take his medication, Nurse Timbrook did nothing to address Mr. Mangum's serious symptoms.

At 9:30 the following morning, Nurse Hartley (not a defendant in this case) asked Nurse Timbrook, his supervisor, to take a look at Mr. Mangum after witnessing Mr. Mangum's condition and concluding that, based on his previous dealings with alcohol detox, it would be beneficial if Mr. Mangum was seen by an outside medical professional and had his ribs x-rayed. In response, Nurse Timbrook looked at Mr. Mangum through the door and spoke to him through the glass. She encouraged fluids and decided to continue to watch Mr. Mangum for changes. According to her notes, Mr. Mangum was oriented to name only. His skin was warm and clammy, he was unable to hold a coherent conversation, he was incontinent, and he had fecal matter on himself.

At 11:00, Nurse Timbrook looked back in on Mr. Mangum. He drank some water and ate half a chicken nugget. He was sitting on his toilet stool with his head on the sink. Nurse Timbrook noticed a large bruise the size of a plum on his right forearm that Mr. Mangum said was caused by his girlfriend beating him up.

At 12:45 that afternoon, Nurse Timbrook returned to Mr. Mangum's cell where she found him lying in the floor. He was "diaphoretic," and he had diarrhea all over

himself and his cell. His speech was incoherent. Mr. Mangum had a pulse of 46. Finally, Nurse Timbrook asked officers to call EMS to take Mr. Mangum to the emergency room.

The facts pled are sufficient to support the inference that Nurse Timbrook perceived that Mr. Mangum had a substantial need for medical attention that placed Mr. Mangum at serious risk, and that she consciously disregarded that risk by failing to send him to the hospital in a timely manner. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) (a prisoner's medical needs must be addressed "within a reasonable time"). Nurse Timbrook's motion to dismiss will be denied.

### A. First Med

Plaintiffs cannot assert § 1983 claims against a state actor under the theory of *respondeat superior*. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 692-94 (1988)). A plaintiff may only recover from an employer for its own wrongdoing. *Id.* Under *Monell*, the an employer cannot be found liable unless the plaintiff can establish that an officially executed policy or the toleration of a custom leads to, causes, or results in the deprivation of a constitutionally protected right. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691). The standard is the same for a § 1983 suit against a private corporation. *McDaniel*, 2013 WL 1120866, at *3.

A custom can be established by "proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Memphis, Tenn. Area Local, Am. Postal Workers*

14

Case 3:14-cv-00264-PLR-CCS   Document 102   Filed 02/19/15   Page 14 of 16   PageID #: 1204

*Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004)). *Monell* liability requires a showing that the custom is "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (quoting *Doe v. Claiborne County*, 103 F.3d at 507).

First Med's motion to dismiss asserts that Mr. Mangum has failed to identify a policy or custom that resulted in the violation of a constitutional right. According to the amended complaint, First Med had a contract with Sevier County to provide medical care to its prisoners and pretrial detainees. As provider of medical care at a state detention facility, First Med acted under the color of state law. *See, e.g., West*, 487 U.S. at 54; *McDaniel* 2013 WL 1120866, at *6.

Mr. Mangum has pled facts in support of his allegation that several of First Med's employees violated his constitutional rights. Accepting the facts pled as true, and making all inferences in the plaintiff's favor, this widespread deliberate indifference by First Med's employees to Mr. Mangum's serious medical needs supports the inference that First Med has failed to train its employees or has a custom of tolerating such behavior. Furthermore, First Med was on notice of its potential constitutional violations. It has been sued numerous times in this district based on similar complaints. *See, e.g., Mcdaniel*, 2013 WL 1120866; *Paulk v. Sevier County*, 2012 WL 5997948 (E.D. Tenn. Nov. 30, 2012); *Mason v. Sevier County*, 3:12-cv-469 (E.D. Tenn.) (lawsuit against First Med asserting deliberate indifference for detoxing inmate). First Med's motion to dismiss will be denied.

## IV. Conclusion

For the foregoing reasons, the defendants' motions to dismiss [R. 34, 37, 39, 41, 43] are **DENIED**.

**IT IS SO ORDERED**.

_____
**UNITED STATES DISTRICT JUDGE**